UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JO ANN CURRIE,<br><br>                Plaintiff,<br><br>    v.<br><br>ALPHA THERAPEUTIC<br>CORPORATION<br><br>                Defendant. | CASE NO. C11-2031JLR<br><br>ORDER GRANTING<br>DEFENDANT'S MOTIONS |

## I.  INTRODUCTION

Before the court are Defendant Alpha Therapeutics Corporation's ("Alpha") (1) motion to dismiss the claims of Plaintiff Jo Ann Currie (Dkt. # 11), (2) motion for entry of a vexatious litigant order (Dkt. # 12), and (3) motion requesting judicial notice of court records from prior state and federal lawsuits initiated by Ms. Currie against Alpha (Dkt. # 13).  Having reviewed the motions, the submissions filed in support and opposition thereto, and the relevant law, and being fully advised, the court GRANTS the motions.

ORDER- 1

## II. BACKGROUND

### A. Plaintiffs' Complaint

Ms. Currie alleges negligence, violation of privacy, and a possible medical malpractice action arising from events beginning in 1992 when she visited a plasma center in Everett, Washington operated by Alpha. (Compl. (Dkt. # 4) ¶ 6.) Ms. Currie alleges that the phlebotomist "stuck me pressed down on needle" and that a few days later she noticed a lump in her arm. (*Id.* ¶ 7.) She alleges that her treatment fell below the standard of care reasonably expected. (*Id.* ¶ 8, § IV.) Ms. Currie also alleges that she returned to the center in 1993 and 1997 and saw that the phlebotomist who allegedly injured her was still working there. (*Id.* ¶ 9.) She further alleges that when she visited the center in 1999, employees were "running around" and invaded her privacy by asking a personal question. (*Id.* ¶¶ 10, 13.) Finally, Ms. Currie alleges that in 1999 she went to BioLife, a different plasma center not operated by Alpha, and was assaulted. (*Id.* ¶ 11.) She alleges that Alpha caused the assault because she would not have gone to BioLife if she had not been injured at the Alpha center. (*Id.*) In addition to setting forth this set of alleged facts, Ms. Currie explains that she brought prior lawsuits against Alpha in 2000 and 2003, and that she tried to seek arbitration through the American Arbitration Association in 2009. (*Id.* ¶¶ 12-13, § V.)

### B. History of Prior Claims by Ms. Currie against Alpha

Ms. Currie references the prior suits she has asserted against Alpha in her complaint, but the court will nevertheless catalogue her history of litigation below.

1. **Snohomish County Superior Court (Cause No. 00-2-04872-4); Washington Court of Appeals (No. 48192-41); Washington Supreme Court (No. 71201-8)**

Ms. Currie filed her first action against Alpha in Snohomish County Superior Court in June 2000. (Galipeau Decl. (Dkt. # 14) Ex. 1.) Ms. Currie alleged that she was "jabbed" with a needle at an Alpha center in Everett, Washington in 1992 or 1993, and subsequently developed damaged tissue in her right arm. (*Id.* Ex. 1 ¶ 3 & Attachment; Ex. 2 at 1). She further alleged that in 1999 she was asked personal questions, was slapped on the thigh, and was jabbed with a needle while employees were running in front of her bed. (*Id.* Ex. 1 ¶ 3; Ex. 2 ¶ 1 at 2.)

On Alpha's motion for summary judgment, the trial court dismissed the complaint with prejudice. (*Id.* Ex. 3.) Ms. Currie missed the appeal deadline and filed a motion to enlarge time before the Washington Court of Appeals. (*See id.* Ex. 4.) The Court of Appeals denied the motion in May 2001, prohibiting Ms. Currie from filing an appeal of the trial court's order of dismissal. (*Id.*) Ms. Currie then asked for discretionary review of the decision by the Court of Appeals, but in August 2001, the Washington Supreme Court denied review. (*Id.* Exs. 5-6.) Ms. Currie persisted and asked the Washington Supreme Court to modify its order denying discretionary review, which the Chief Judge denied in October 2001. (*Id.* Exs. 7-8.) It appears that Ms. Curry then sought to amend her complaint in Snohomish County Superior Court. (*See id.* Ex. 9.) The Superior Court denied her motion in July 2002 on grounds that "this cause of action previously was dismissed." (*Id.*)

2. **King County Superior Court (No. 03-2-12004-9 SEA);
Washington State Court of Appeals (No. 54105-6-I);
Washington State Supreme Court (No. 76828-5)**

Ms. Currie filed her second lawsuit against Alpha in December 2003 in King County Superior Court. (Galipeau Decl. Ex. 10.) She alleged medical malpractice and intentional torts arising from visits to Alpha's plasma centers. (*Id.* at 1-2.) She alleged that the conduct of Alpha's employees fell below the reasonable standard of care, that they made defamatory statements about her, and that she was later assaulted at BioLife, a plasma center in Bellingham, Washington. (*Id.*; *see also id.* Ex. 17.)

In March 2004, the trial court granted Alpha's motion for summary judgment and dismissed Ms. Currie's complaint with prejudice. (*See id.* Exs. 12-16.) The court further ordered that "Plaintiff Currie shall not file any further civil actions against Alpha . . . without prior authorization from this Court." (*Id.* Ex. 16 at 2.) Ms. Currie appealed the trial court's order of dismissal to the Washington Court of Appeals. (*See id.* Ex. 17.) The Court of Appeals affirmed the dismissal, stating "it is clear that [Ms. Currie's] allegations in the law suit [sic] are based on the same injuries that allegedly occurred in the 1990's and that were the subject of prior cases" and that Ms. Currie "is barred from again raising the same claims." (*Id.*) Ms. Currie filed a motion for reconsideration, which the Washington Court of Appeals denied. (*Id.* Ex. 18.) Ms. Currie again requested discretionary review of the Court of Appeals decision (*id.* Ex. 19), but once again, in November 2005, the Washington Supreme Court denied her petition (*id.* Ex. 20).

### 3. United States District Court for the Western District of Washington (No. C05-2115JLR)

In December 2005, one month after the Washington Supreme Court denied her second motion for discretionary review of her state court actions, Ms. Currie filed suit against Alpha in United States district court for the Western District of Washington. (Galipeau Decl. Ex. 21.) Once again, she asserted claims for medical malpractice and negligent torts. (*Id.*) She alleged that in 1999 a nurse disclosed confidential information without her consent and did not meet the reasonable standard of care. (*Id.* ¶ 4.) Ms. Currie further alleged that she was assaulted by an employee of BioLife, a plasma center she allegedly visited as a result of her prior experiences at Alpha's center. (*Id.*) Finally, she alleged that she was injured in 1992 by an Alpha employee, causing a tissue ball in her arm, and that she saw that employee still working there in 1997. (*Id.*)

This court issued sua sponte an Order to Show Cause why Ms. Currie's claims should not be dismissed on grounds of res judicata. (*Id.* Ex. 22.) Plaintiff provided two responses to the Order to Show Cause. (*Id.* Ex. 23-24.) The court held that her "submissions confirm that her suit is barred by res judicata." (*Id.* Ex. 25 at 1.) The court stated:

> Plaintiff's exhibits to her application to proceed in forma pauperis . . . indicate that she has filed similar complaints derived from the same transactional nucleus of facts against Defendant Alpha Therapeutic Corporation in King County and Snohomish County Superior Courts – both of which were dismissed with prejudice and affirmed on appeal to the Washington State of Court Appeals . . . . That Plaintiff failed to raise *all* potential claims arising from her dealings with Defendant's plasma center during the course of litigating her two suits in state court does not change this result.

(*Id.* at 1-2.) The court, therefore, dismissed Ms. Currie's action with prejudice in June 2006. (*Id.* at 2.)

### 4. Arbitration through American Arbitration Association

Ms. Currie also brought her claims against Alpha to the American Arbitration Association in 2009. (Compl. ¶ 13, § V.) The arbitration was similarly closed. (*Id.* § V.)

## III. ANALYSIS

### A. Motion for Judicial Notice

Alpha has requested that court take judicial notice of certain filings and court rulings from Ms. Currie's prior lawsuits. (Mot. for Jud. Not. (Dkt. # 13).) Federal Rule of Evidence 201 permits judicial notice of any fact "not subject to reasonable dispute in that it is . . . capable of accurate or ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts may take judicial notice of information in the public record without converting a motion to dismiss into a motion for summary judgment. *Intri-Plex Tech., Inc. v. Crest Grp, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). In particular, courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1215 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)). Accordingly, the court grants Alpha's motion for the court to take judicial notice of these materials.

**B. Motion to Dismiss**

Alpha has moved to dismiss Ms. Currie's claims based on the doctrine of res judicata and expiration of the statute of limitations. (Mot. to Dismiss (Dkt. # 11).) Res judicata applies only where there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties. *Turtle Island Restoration Network v. U.S. Dep't of State*, --- F.3d ---, 2012 WL 516060, at *2 (9th Cir. 2012).

All of the elements required for application of the doctrine of res judicata are present. The parties here and in Ms. Currie's prior lawsuits are identical. Ms. Currie's present claims are remarkably similar to her prior suits against Alpha. In each of her complaints, Ms. Currie alleges that (1) she was injured selling plasma in 1992 or 1993 causing a lump or "tissue ball" in her arm, (2) Alpha failed to meet the alleged standard of care, (3) Alpha employees violated her privacy and asked her personal questions at a plasma center, and (4) she was assaulted at the BioLife facility in 1999. Her claims all arise out of the same transactional nucleus of facts, and each could have been brought in her first lawsuit.[1] Accordingly, there is an identity of claims. Finally, all of Ms. Currie's prior suits were dismissed with prejudice. "A dismissal with prejudice is a determination on the merits, for res judicata purposes." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 962

---

[1] A plaintiff need not bring every possible claim, but where claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding. *Turtle Island Restoration Network*, 2012 WL 516060, at *3. As a result, to the extent there are additional claims in Ms. Currie's present complaint arising from the same factual circumstances, the court's application of res judicata does not change.

ORDER- 7

(9th Cir. 2006). Thus, the court rules that the doctrine of res judicata applies to bar Ms. Currie's suit.

In addition, in Washington, there is a three-year statute of limitations for tort claims. *Moratti ex rel. Tarutis v. Farmers Ins. Co. of Washington*, 254 P.3d 939, 942 (Wash. Ct. App. 2011) (citing RCW 4.16.080). Ms. Currie's claims sound in tort and arose out a series of events that occurred between approximately 1992 and 1999. Ms. Currie first brought suit with respect to her claims in 2000, and so cannot assert that the statute of limitations should be equitably tolled or that the discovery rule should apply after this date. Accordingly, Ms. Currie's claims are also barred by the applicable statute of limitations.

**C. Motion for Entry of Vexatious Litigant Order**

Alpha has moved for the entry of a vexatious litigant order against Ms. Currie. (Mot. Vex. Lit. (Dkt. # 12).) "The All Writs Acts, 28 U.S.C. § 1651(a), provides district courts with the inherent power to enter pre-filing orders against vexatious litigants." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). Although such orders should be rare, "[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990). A vexatious litigant order should be entered when (1) the litigant has received notice and a chance to be heard before the order is entered, (2) there is an adequate record for review, (3) the litigant's actions are frivolous or harassing, and

(4) the vexatious litigant order is "narrowly tailored to closely fit the specific vice encountered." *Id.* at 1147-48; *Molski*, 500 F.3d at 1057.

The first two requirements for entry of a vexatious litigant order are met. Ms. Currie has received notice and an opportunity to be heard with respect to Alpha's motion. *See Molski*, 500 F.3d at 1058-59 (plaintiff had sufficient notice when he was served with the motion and had an opportunity to respond). Indeed, she filed a response to the motion.[2] (*See* Resp. (Dkt. # 16).) In addition, there is an adequate record for review. *See, e.g.*, *id.* at 1059 ("The record before the district court contained a complete list of the cases filed by [plaintiff] . . . , along with the complaints from many of those cases. Although the district court's decision . . . did not list every case filed by Molski, it did outline and discuss many of them."). Alpha has submitted detailed documentary evidence of Ms. Currie's decade of prior litigations and court filings, of which the court has taken judicial notice. (*See generally* Galipeau Decl.)

The third factor, whether the litigant's actions are frivolous or harassing, "gets to the heart of the vexatious litigant analysis." *Molski*, 500 F.3d at 1059 (quoting *De Long*, 912 F.2d at 1148). The court must make substantive findings and must look at both the number and content of the litigant's filings. *Id.* The plaintiff's claims must not only be numerous, but also be patently without merit. *Id.* Not only has Ms. Currie now initiated four lawsuits (two in state court and two in federal court) and one arbitration proceeding against Alpha arising from the same general set of operative facts, but all of Ms. Currie's

---

[2] No party requested oral argument with respect to Alpha's motion for a vexatious litigant order.

prior complaints have been dismissed with prejudice. Ms. Currie has wasted the district court's and Alpha's time and money attempting to re-litigate claims that this court originally dismissed in 2006, and other state courts dismissed even earlier. *See Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990). The court finds that Ms. Currie's claims have been both numerous and patently without merit. *See, e.g.*, *Moy v. United States*, 906 F.2d 467, 468-70 (9th Cir. 1990) (entering vexatious litigant order when plaintiff had filed two consecutive actions against the defendant arising out of the same set of operative facts, and each involving several complaints and numerous motions); *Ortiz v. Cox*, 759 F. Supp. 2d 1258, 1263-64 (D. Nev. 2011) (entering vexatious litigant order where plaintiff had filed seven actions against defendants); *Johns v. Los Gatos*, 834 F. Supp. 1230, 1232 (N.D. Cal. 1993) (entering vexatious litigant order when plaintiff had filed five similar actions over a period of ten years).

Finally, a vexatious litigation order "must be narrowly tailored to the vexatious litigant's wrongful behavior." *Molski*, 500 F.3d at 1961. Alpha has requested a vexatious litigant order that prohibits Ms. Currie from filing any claim at all against Alpha. Alpha asserts that such an order would not be overbroad because Alpha ceased all business operations in 2003, and therefore Ms. Currie could not have any additional claims against Alpha that were not barred by the statute of limitations. (Mot. (Dkt. # 12) at 10.) The court, however, is mindful of the Ninth Circuit's instruction that any vexatious litigant order must be narrowly tailored to the litigant's wrongful behavior. Accordingly, the court grants Alpha's motion for a vexatious litigant order, but will limit that order to any additional pleadings or other filings by Ms. Currie against Alpha arising

out of the same transactions or set of operative facts described in her present complaint or the prior lawsuits detailed in this order.

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS Alpha's motion requesting judicial notice of certain filings and court rulings from Ms. Currie's prior lawsuits (Dkt. # 13), GRANTS Alpha's motion to dismiss Ms. Currie's claims with prejudice (Dkt. # 11), and GRANTS Alpha's motion for a vexatious litigant order (Dkt. # 12). The court further ORDERS that Ms. Currie shall not file any further complaints or other pleadings against Alpha in this court that arise out of the same set of operative facts or transactions contained in any of her complaints described herein. The court DIRECTS that the Clerk of this Court shall not accept for filing any further complaints by Ms. Currie against Alpha until any such complaint has been reviewed by a Judge of this court for compliance with this Order. *See, e.g.*, *Moy*, 906 F.2d at 471. Finally, the court notifies Ms. Currie that her failure to abide by this order may result in sanctions.

Dated this 30th day of March, 2012.

JAMES L. ROBART
United States District Judge